AETNA CASUALTY AND SURETY COMPANY *v.*
GEORGE A. MURPHY III
(13206)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued January 5—decision released March 1, 1988

*Lester Katz,* with whom was *Rebecca B. Lamont,* for the appellant (defendant-third party plaintiff).

*Richard A. Roberts,* with whom, on the brief, was *Paul A. Morello, Jr.,* for the appellee (third party defendant).

PETERS, C. J. The sole issue in this appeal is whether an insured who belatedly gives notice of an insurable claim can nonetheless recover on the insurance contract by rebutting the presumption that his delay has been prejudicial to the insurance carrier. The plaintiff, Aetna Casualty and Surety Company, brought an action against the defendant, George A. Murphy III, to recover for damage he allegedly caused to a building it had insured. The defendant then filed a third party complaint impleading his comprehensive liability insurer, Federal Insurance Company, Chubb Group of Insurance Companies (hereinafter Chubb), as third party defendant. Chubb successfully moved for summary judgment on the ground that Murphy, the defendant and third party plaintiff, had inexcusably and unreasonably delayed in complying with the notice provisions of the insurance contract. The defendant appeals from this judgment. We find no error.

The underlying facts are undisputed. The defendant, George A. Murphy III, a dentist, terminated a lease with Hopmeadow Professional Center Associates on or about November 30, 1982. The manner in which he had dismantled his office gave rise to a claim for damages to which the plaintiff, Aetna Casualty and Surety Company, became subrogated. Although served with the plaintiff's complaint on November 21, 1983, the defendant gave no notice of the existence of this claim to Chubb until January 10, 1986. The motion to implead Chubb as third party defendant was filed on May 14, 1986, and granted on June 2, 1986.

Chubb moved for summary judgment on its three special defenses,[1] alleging Murphy's noncompliance with

---

[1] Chubb, the third party defendant, had filed three special defenses, although the trial court ruled on only one. The first special defense relied

the terms of his insurance policy. Its first claim was that it was entitled to judgment because Murphy had ignored two provisions in the Chubb policy imposing notice requirements on its policyholders. The first of these provisions states: "In the event of an occurrence, written notice . . . shall be given by or for the insured to the company . . . as soon as practicable." The other states: "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative." In his answer to Chubb's special defenses, Murphy admitted his failure to comply with these provisions. Accordingly, his affidavit opposing summary judgment raised no question of fact but relied on his argument that, as a matter of law, an insurer may not deny coverage because of late notice without a showing, on its part, that it has been prejudiced by its insured's delay.

The trial court granted Chubb's motion for summary judgment on its first special defense. It found that Murphy's two year delay in giving notice to Chubb was inexcusable and unreasonable, and concluded that such a delay "voids coverage and insurer's duties under the contract [of insurance] . . . ."

On appeal, Murphy challenges only the trial court's conclusion of law. Despite his inexcusable and unreasonable delay in giving notice, he maintains that he is entitled to insurance coverage because Chubb has failed to allege or to show prejudice because of his late notice.

As Murphy concedes, the trial court's decision accurately reflects numerous holdings of this court that,

---

on Murphy's admitted failure to give written notice of loss as soon as practicable and to forward notice of the claim against him immediately upon its filing by the plaintiff. The second and third special defenses related to questions of coverage: whether the loss suffered by Murphy was excluded as having been "expected or intended from the standpoint of the insured" or as falling outside the policy definitions of "occurrence."

absent waiver, an unexcused, unreasonable delay in notification constitutes a failure of condition that entirely discharges an insurance carrier from any further liability on its insurance contract. *Lafayette Bank & Trust Co.* v. *Aetna Casualty & Surety Co.*, 177 Conn. 137, 139, 411 A.2d 937 (1979); *West Haven* v. *United States Fidelity & Guaranty Co.*, 174 Conn. 392, 398, 389 A.2d 741 (1978); *Andover* v. *Hartford Accident & Indemnity Co.*, 153 Conn. 439, 444–45, 217 A.2d 60 (1966); *Shelby Mutual Ins. Co.* v. *Williams*, 152 Conn. 178, 186–87, 205 A.2d 372 (1964); *Silver* v. *Indemnity Ins. Co.*, 137 Conn. 525, 530–32, 79 A.2d 355 (1951); *Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 696, 20 A.2d 87 (1941); *Haskell* v. *Eagle Indemnity Co.*, 108 Conn. 652, 655–56, 144 A. 298 (1929).

In our appraisal of the continued vitality of this line of cases, it is noteworthy that they do not reflect a searching analysis of what role prejudice, or its absence, should play in the enforcement of such standard clauses in insurance policies. That issue was put on the table, but not resolved, by a vigorous dissent in *Plasticrete Corporation* v. *American Policyholders Ins. Co.*, 184 Conn. 231, 240–44, 439 A.2d 968 (1981) (*Bogdanski, J.,* dissenting). The time has come for us to address it squarely.

We are confronted, in this case, by a conflict between two competing principles in the law of contracts. On the one hand, the law of contracts supports the principle that contracts should be enforced as written, and that contracting parties are bound by the contractual provisions to which they have given their assent. Among the provisions for which the parties may bargain are clauses that impose conditions upon contractual liability. "If the occurrence of a condition is required by the agreement of the parties, rather than as a matter of law, a rule of strict compliance traditionally applies." E. Farnsworth, Contracts (1982) § 8.3, p. 544; see

*Grenier* v. *Compratt Construction Co.,* 189 Conn. 144, 148, 454 A.2d 1289 (1983); *Brauer* v. *Freccia,* 159 Conn. 289, 293-94, 268 A.2d 645 (1970); *Strimiska* v. *Yates,* 158 Conn. 179, 185-86, 257 A.2d 814 (1969). On the other hand, the rigor of this traditional principle of strict compliance has increasingly been tempered by the recognition that the occurrence of a condition may, in appropriate circumstances, be excused in order to avoid a "disproportionate forfeiture." See, e.g., 2 Restatement (Second), Contracts (1981) § 229;[2] *Johnson Controls, Inc.* v. *Bowes,* 381 Mass. 278, 280, 409 N.E.2d 185 (1980); 3A A. Corbin, Contracts (1960 & Sup. 1984) § 754; E. Farnsworth, supra, § 8.7, pp. 570-71; 5 S. Williston, Contracts (3d Ed. Jaeger 1961) §§ 769 through 811.

In numerous cases, this court has held that, especially in the absence of conduct that is "wilful," a contracting party may, despite his own departure from the specifications of his contract, enforce the obligations of the other party with whom he has dealt in good faith.

[2] The Restatement (Second) of Contracts (1981) § 229, entitled "Excuse of a Condition to Avoid Forfeiture," provides: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange."

Comment b elaborates on the concept of "disproportionate forfeiture" as follows: "The rule stated in the present Section is, of necessity, a flexible one, and its application is within the sound discretion of the court. Here, as in § 227 (1), 'forfeiture' is used to refer to the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange. See Comment b to § 227. The extent of the forfeiture in any particular case will depend on the extent of that denial of compensation. In determining whether the forfeiture is 'disproportionate,' a court must weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture. *The character of the agreement may, as in the case of insurance agreements, affect the rigor with which the requirement is applied.*" (Emphasis added.)

In construction contracts, a builder's deviation from contract specifications, even if such a departure is conscious and intentional, will not totally defeat the right to recover in an action against the owner on the contract. *Grenier* v. *Compratt Construction Co.,* supra, 148–49; *Vincenzi* v. *Cerro,* 186 Conn. 612, 615, 442 A.2d 1352 (1982). In contracts for the sale of real property, the fact that a contract states a date for performance does not necessarily make time of the essence. *Kakalik* v. *Bernardo,* 184 Conn. 386, 392, 439 A.2d 1016 (1981); see *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 148, 328 A.2d 711 (1973). A purchaser of real property does not, despite his knowing default, forfeit the right to seek restitution of sums of money earlier paid under the contract of sale, even when such payments are therein characterized as liquidated damages. *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 509, 435 A.2d 1022 (1980); *Pierce* v. *Staub,* 78 Conn. 459, 466, 62 A. 760 (1906). Finally, despite a failure to deliver contract goods, a seller need not pay an amount contractually designated as liquidated damages to a buyer who has suffered no damages attributable to the seller's breach. *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 689, 220 A.2d 263 (1966).

This case law demonstrates that, in appropriate circumstances, a contracting party, despite his own default, may be entitled to relief from the rigorous enforcement of contract provisions that would otherwise amount to a forfeiture. On the question of what circumstances warrant such relief, no better guidelines have ever been proffered than those articulated by Judge Benjamin Cardozo in the celebrated case of *Jacob & Youngs, Inc.* v. *Kent,* 230 N.Y. 239, 129 N.E. 889 (1921). Discussing the interpretation of contracts to ascertain how the parties intended to govern their contractual relationship, Cardozo first notes that "[t]here

will be no assumption of a [contractual] purpose to visit venial faults with oppressive retribution." Id., 242. The opinion then continues: "Those who think more of symmetry and logic in the development of legal rules than of practical adaptation to the attainment of a just result will be troubled by a classification where the lines of division are so wavering and blurred. Something, doubtless, may be said on the score of consistency and certainty in favor of a stricter standard. The courts have balanced such considerations against those of equity and fairness, and found the latter to be the weightier. . . . Where the line is to be drawn between the important and the trivial cannot be settled by a formula. 'In the nature of the case precise boundaries are impossible' (2 Williston on Contracts, sec. 841). The same omission may take on one aspect or another according to its setting. . . . The question is one of degree, to be answered, if there is doubt, by the triers of the facts . . . and, if the inferences are certain, by the judges of the law . . . . We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence. Then only can we tell whether literal fulfilment is to be implied by law as a condition."[3] Id., 242–43.

In the setting of this case, three considerations are central. First, the contractual provisions presently at issue are contained in an insurance policy that is a "contract of adhesion," the parties to this form contract having had no occasion to bargain about the conse-

---

[3] The court's opinion in *Jacob & Youngs, Inc.* v. *Kent*, 230 N.Y. 239, 243, 129 N.E. 889 (1921), suggests that the parties may, by express contractual language, "effectuate a purpose that performance of every term shall be a condition of recovery." That observation is not easy to reconcile with the fact that the record in the case discloses the existence of a clause specifically permitting rejection, whenever discovered, of any work of the contractor that failed "fully" to conform with contract specifications "in every respect." See J. Dawson, W. Harvey & S. Henderson, Contracts and Contract Remedies (4th Ed. 1982) pp. 816–17.

quences of delayed notice. Second, enforcement of these notice provisions will operate as a forfeiture because the insured will lose his insurance coverage without regard to his dutiful payment of insurance premiums. Third, the insurer's legitimate purpose of guaranteeing itself a fair opportunity to investigate accidents and claims can be protected without the forfeiture that results from presuming, irrebuttably, that late notice invariably prejudices the insurer.

There can be no question that the insurance policy in this case is a "contract of adhesion." That term was first introduced into American legal vocabulary by Professor Edwin Patterson, who noted that life insurance contracts are contracts of adhesion because "[t]he contract is drawn up by the insurer and the insured, who merely 'adheres' to it, has little choice as to its terms." E. Patterson, "The Delivery of a Life-Insurance Policy," 33 Harv. L. Rev. 198, 222 (1919). Standardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not subject to the normal bargaining processes of ordinary contracts. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 404, 446 A.2d 1059 (1982) (*Shea, J.,* dissenting); *Weaver Bros., Inc.* v. *Chappel,* 684 P.2d 123, 125 (Alaska 1984); *Cooper* v. *Government Employees Ins. Co.,* 51 N.J. 86, 93, 237 A.2d 870 (1968); *Great American Ins. Co.* v. *C. G. Tate Construction Co.,* 303 N.C. 387, 392–93, 279 S.E.2d 769 (1981); *Brakeman* v. *Potomac Ins. Co.,* 472 Pa. 66, 72–73, 371 A.2d 193 (1977); F. Kessler, "Contracts of Adhesion— Some Thoughts about Freedom of Contract," 43 Colum. L. Rev. 629, 631–32 (1943). The fact that the notice provisions in the Chubb insurance policy were an inconspicuous part of a printed form; cf. General Statutes §§ 42a-1-201 (10) and 42a-2-316 (2); supports the characterization of these clauses as a "contract of adhesion." Nothing in the record suggests that they

were brought to Murphy's attention or that, if they had been, their terms would have been subject to negotiation.

It is equally clear that literal enforcement of the notice provisions in this case will discharge Chubb from any further liability to Murphy with regard to the present claims for insurance coverage. That indeed is the necessary purport of Chubb's special defense and the consequence of the trial court's ruling on its motion for summary judgment. The operative effect of noncompliance with the notice provisions is a forfeiture of the interests of the insured that is, in all likelihood, disproportionate. *Johnson Controls, Inc.* v. *Bowes,* supra, 280–81.

In determining whether an insured is entitled to relief from such a disproportionate forfeiture, loss of coverage must be weighed against an insurer's legitimate interest in protection from stale claims. "The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. . . . And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation." 8 J. Appleman, Insurance Law and Practice (Rev. Ed. 1981) § 4731, pp. 2–5. If this legitimate purpose can be protected by something short of automatic enforcement of the notice provisions, then their strict enforcement is unwarranted.

In our judgment, a proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's

delay in giving notice of an event triggering insurance coverage. If it can be shown that the insurer suffered no material prejudice from the delay, the nonoccurrence of the condition of timely notice may be excused because it is not, in Restatement terms, "a material part of the agreed exchange." Literal enforcement of notice provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages. *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.,* supra, 689.

A significant number of cases in other jurisdictions lend support to our conclusion that, absent a showing of material prejudice, an insured's failure to give timely notice does not discharge the insurer's continuing duty to provide insurance coverage. Most of these decisions place the burden of proof on the issue of prejudice on the insurer. See *Weaver Bros., Inc.* v. *Chappel,* supra, 125–26; *Lindus* v. *Northern Ins. Co. of New York,* 103 Ariz. 160, 164, 438 P.2d 311 (1968); *Billington* v. *Interinsurance Exchange,* 71 Cal. 2d 728, 744, 456 P.2d 982, 79 Cal. Rptr. 326 (1969); *Falcon Steel Co.* v. *Maryland Casualty Co.,* 366 A.2d 512, 518 (Del. Super. 1976); *O'Neal* v. *Southern Farm Bureau Ins. Co.,* 325 So. 2d 887, 891 (La. App. 1976); *Ouellette* v. *Maine Bonding & Casualty Co.,* 495 A.2d 1232, 1234–35 (Me. 1985); *Johnson Controls, Inc.* v. *Bowes,* supra, 282; *Wendel* v. *Swanberg,* 384 Mich. 468, 478, 185 N.W.2d 348 (1971); *MFA Mutual Ins. Co.* v. *Sailors,* 180 Neb. 201, 204–205, 141 N.W.2d 846 (1966); *Cooper* v. *Government Employees Ins. Co.,* supra, 93–94; *Foundation Reserve Ins. Co.* v. *Esquibel,* 94 N.M. 132, 134, 607 P.2d 1150 (1980); *Great American Ins. Co.* v. *C. G. Tate Construction Co.,* supra, 394–95; *Fox* v. *National Savings Ins. Co.,* 424 P.2d 19, 25 (Okla. 1967); *Lusch* v. *Aetna Casualty & Surety Co.,* 272 Or. 593, 599–601, 538 P.2d 902 (1975); *Brakeman* v. *Potomac Ins. Co.,* supra, 76–77;

*Pennsylvania General Ins. Co.* v. *Becton,* 475 A.2d 1032, 1035 (R.I. 1984); *Factory Mutual Liability Ins. Co.* v. *Kennedy,* 256 S.C. 376, 381, 182 S.E.2d 727 (1971); *Oregon Automobile Ins. Co.* v. *Salzberg,* 85 Wash. 2d 372, 377, 535 P.2d 816 (1975). In a few jurisdictions, although prejudice from delay is presumed, that presumption is rebuttable if the insured can demonstrate an actual lack of material prejudice. See *National Gypsum Co.* v. *Travelers Indemnity Co.,* 417 So. 2d 254, 256 (Fla. 1982); *Henderson* v. *Hawkeye-Security Ins. Co.,* 252 Iowa 97, 105–106, 106 N.W.2d 86 (1960); *Lumbermens Mutual Casualty Co.* v. *Oliver,* 115 N.H. 141, 144, 335 A.2d 666 (1975); *Zurich Ins. Co.* v. *Valley Steel Erectors, Inc.,* 13 Ohio App. 2d 41, 44, 233 N.W.2d 597 (1968); *Ehlers* v. *Colonial Penn Ins. Co.,* 81 Wis. 2d 64, 69, 259 N.W.2d 718 (1977). By contrast to these cases which afford some latitude for factual inquiry into prejudice, some jurisdictions continue to enforce delayed notice provisions literally. See *State Farm Mutual Automobile Ins. Co.* v. *Burgess,* 474 So. 2d 634, 636 (Ala. 1985); *Marez* v. *Dairyland Ins. Co.,* 638 P.2d 286, 290 (Colo. 1981); *Government Employees Ins. Co.* v. *Harvey,* 278 Md. 548, 553, 366 A.2d 13 (1976); *Terrell* v. *State Farm Ins. Co.,* 346 N.W.2d 149, 152 (Minn. 1984); *Reliance Ins. Co. of New York* v. *Garsart Building Corporation,* 131 App. Div. 2d 828, 829, 517 N.Y.S.2d 189 (1987); *Podlewski* v. *Government Employees Ins. Co.,* 616 S.W.2d 298, 299–300 (Tex. Civ. App. 1981); *State Farm Mutual Automobile Ins. Co.* v. *Porter,* 221 Va. 592, 597, 272 S.E.2d 196 (1980).

In light of existing related precedents in this jurisdiction, although we are persuaded that the existence or nonexistence of prejudice from delayed notice should be determined on a factual basis, the burden of establishing lack of prejudice must be borne by the insured. It is the insured who is seeking to be excused from the

consequences of a contract provision with which he has concededly failed to comply. His position is akin to that of the defaulting purchaser of real property in *Vines* v. *Orchard Hills, Inc.*, supra, 510, where we held that, "[t]o prove unjust enrichment, in the ordinary case, the purchaser, because he is the party in breach, must prove that the damages suffered by his seller are less than than moneys received from the purchaser. . . . It may not be easy for the purchaser to prove the extent of the seller's damages, it may even be strategically advantageous for the seller to come forward with relevant evidence of the losses he has incurred and may expect to incur on account of the buyer's breach. Nonetheless, only if the breaching party satisfies his burden of proof that the innocent party has sustained a net gain may a claim for unjust enrichment be sustained." Principles of unjust enrichment and restitution bear a family resemblance to those involved in considerations of forfeiture. Under both sets of principles, the law has come to permit a complainant to seek a fair allocation of profit and loss despite the complainant's own failure to comply fully with his contract obligations. The determination of what is fair, as a factual matter, must however depend upon a proper showing by the complainant who seeks this extraordinary relief.

Applying these principles to the present case, we conclude that the trial court was correct in granting summary judgment, although not for the reason upon which it relied. *A & H Corporation* v. *Bridgeport*, 180 Conn. 435, 443, 430 A.2d 25 (1980); *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978). Chubb, the third party defendant, was not automatically discharged because of the delay of Murphy, the third party plaintiff, in giving notice of an insured occurrence. Chubb was, however, entitled to summary judgment because Murphy's affidavit opposing summary judgment con-

tained no factual basis for a claim that Chubb had not been materially prejudiced by Murphy's delay.

There is no error.

In this opinion HEALEY, CALLAHAN and GLASS, Js., concurred.

COVELLO, J., concurred in the result.