[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff John Augustyniak holds an unsatisfied judgment in the amount of $75,000. against J.Q. Ann, Inc. and Robert J. Smith. The defendant Western World Insurance Company insured J.Q. Ann, Inc. and Robert J. Smith against losses such as the plaintiff's at the time in question, but Western World has refused to pay the judgment. This action is brought pursuant to Conn. Gen. Stat. 38-175, which provides judgment creditors such as the plaintiff with a direct right of action against the defendant's insurer by way of subrogation.
On September 24, 1985 the plaintiff was physically injured by an intoxicated patron at Escapes Cafe, a bar operated by J.Q. Ann, Inc. and Robert J. Smith. In September, 1986 the plaintiff brought suit for damages against J.Q. Ann, Inc. and Smith. Neither defendant appeared in the action and both were defaulted. On May 27, 1987 judgment entered for $75,000. against both defendants after a hearing in damages before Hon. Harold M. Mulvey.
Western World insured J.Q. Ann, Inc. and Smith for liquor liability claims arising between April 30, 1985 and April 30, 1986. The defendant has refused to pay the plaintiff's judgment, however, contending that the insureds, J.Q. Ann, Inc. and Smith, failed to notify Western World of the plaintiff's lawsuit until after the default had entered, thus prejudicing Western World and relieving it from liability under the policy. The plaintiff and the defendant disagree as to when Western World was given notice of the plaintiff's claim and suit. The plaintiff claims that CT Page 1374 Western World was given notice of the claim beginning in November, 1985. The defendant contends that it was not given notice of the suit until May 21, 1987, just days before the hearing in damages was scheduled to be heard.
The plaintiff offered the testimony of Robert J. Smith, the sole shareholder of J.Q. Ann, Inc. Smith testified that he received a letter from plaintiff's attorney in late November 1985, giving notice that the plaintiff would be making a claim for damages. Smith testified that he believes he brought the letter to Orange Insurance Center Inc., the insurance agency through which he obtained the Western World policy. In September, 1986, Smith testified that he was served with a summons and complaint filed by the plaintiff. J.Q. Ann, Inc. was also served, by service on Attorney Edmund Q. Collier, the Corporation's statutory agent for service. Smith testified that after speaking with Collier about the law suit papers, Smith delivered the summons and complaint to Orange Insurance Center. On December 3, 1986, Augustyniak's attorney filed a motion for default for failure to appear. Copies of the motion were received by both Smith and Collier, who again spoke with one another. Smith testified that after speaking with Collier he took a copy of the motion to Orange Insurance Center.
Attorney Collier also testified. He corroborated Smith's testimony with respect to service of the complaint, receipt of the default motion and the telephone conferences between the two men. Collier further testified, however, that he called the Orange Insurance Center himself when he received the motion for default. He testified that he spoke with Mead Batchelor, the owner of the agency, and although they did not have a detailed conversation, Batchelor assured him that the matter would be submitted to Western World, the insurance carrier.
Smith's claim that notice was given to Western World through Orange Insurance as early as November, 1985 and thereafter was disputed by Batchelor and his office manager, Diane Eger, who also testified. Eger testified that it was she who spoke to Attorney Collier on December 3, 1986 and that this was the first she had ever heard of the Augustyniak claim. She testified that she told Collier she had nothing in her file on this claim and that she had not heard of it before. She told Collier that she would call Smith to get the necessary information. She then spoke with Smith, who stated that he would check his files and return her call. Smith did not call back, however, and on CT Page 1375 December 8, Eger left a second message for him to call her. She also spoke with Collier on December 8 to inform him of her lack of success in getting information from Smith. Eger testified that she heard nothing further from Smith or Collier and on December 16, she wrote to Collier, confirming in writing that Smith still had not responded to her request for information and advising Collier that if a claim was to be submitted, she needed the necessary information promptly. Collier did not respond to the letter despite the fact that he was in possession of a copy of the summons and complaint which he could have readily forwarded.
Eger and Batchelor both testified that it was not until May 18, 1987 that Orange Insurance received a copy of the Augustyniak complaint against Escapes Cafe. On that date, Orange Insurance received a package of material in the mail containing a copy of the Augustyniak complaint with exhibits attached and a copy of the trial list claim for a hearing in damages to the court, which was dated April 16, 1987. Neither Eger nor Batchelor remembered who had sent the package and the envelope was not saved. Orange Insurance immediately sent the summons and complaint to the Connecticut underwriter for Western World, who in turn forwarded the papers to Western World. On May 21, 1987, Western World was in receipt of the Augustyniak complaint.
The conflicting testimony of Smith and Eger and Batchelor cannot be reconciled. Eger's testimony was corroborated by her handwritten notes of her phone conversations with Smith and Collier beginning on December 3. A copy of her December 16 letter to Collier was admitted into evidence. The evidence shows that she followed up on her December 3 phone conversation with Collier in a conscientious and businesslike fashion. Smith, on the other hand, appeared casual and offhanded in his testimony. His recollection was vague in some instances. The court credits the testimony of Eger and finds that Orange Insurance Center did not have any notice of the Augustyniak claim until December 3, 1986 and that it did not receive written notice of the suit and a copy of the summons until May 18, 1987. The court further finds that Western World did not receive any notice of Augustyniak's claim until May 21, 1987.
The failure of Smith and J.Q. Ann, Inc. to notify Western World of Augustyniak's claim until May 21, 1987 is a violation of paragraph 4(a) of the Western World liability policy which requires the insured to give written notice of the claim to the CT Page 1376 carrier "as soon as practicable." This breach does not, however, operate to automatically discharge the insurer from liability. Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409, 418 (1988). If the insured can show that the insurer suffered no material prejudice as a result or the delay in giving notice, then the insurer will not be released. Id. The evidence presented at trial shows that Western World experienced no material prejudice as a result of the delay in giving notice.
After receiving a copy of the summons and complaint on May 21, a Western World suit examiner spoke by phone with Augustyniak's attorney. He learned that the hearing in damages was scheduled for May 27. On May 26, Western World retained Attorney Robert Flanagan. On that same day Western World sent a telegram to Smith and J.Q. Ann, Inc. informing them that Atty. Flanagan had been retained in order to "have the default vacated." However, Western World did not authorize Attorney Flanagan to file an appearance in the matter. Attorney Flanagan appeared at the hearing in damages on May 27, but the court would not allow him to be heard because he did not have an appearance in the file. He therefore left the courthouse and judgment entered later that day against Smith and J.Q. Ann, Inc.
On the following day, May 28, Western World wrote to Smith and J.Q. Ann, Inc., advising that Western World would not indemnify the insureds because of the late submission of the lawsuit to Western World. Western World claimed in the letter to have been severely prejudiced by the delay. The prejudice identified in the letter was the entry of the default judgment for $75,000. The letter stated that the insureds' delay "made it impossible to have this matter set aside by any judicial process."
In its haste to be discharged from liability under its policy, Western World misrepresented the facts and the law. The letter claims that Attorney Flanagan attempted to vacate the default judgment. This statement is inaccurate. Attorney Flanagan was not permitted to ask that the default be vacated because Western World did not authorize Attorney Flanagan to file an appearance in the action, a necessary first step before counsel can seek any relief from the court.
Moreover, it was not "impossible to have this matter set aside." If Attorney Flanagan had been authorized to file a appearance, his chances of succeeding on a motion to re-open on CT Page 1377 May 27, prior to the entry of judgment, would have been quite good. Even more importantly, on May 28 Western World still had the opportunity to move to re-open the default judgment for four additional months thereafter. (Counsel for Western World in this action fails to recognize that Conn. Gen. Stat 52-212 and 212a apply to judgments and not to the mere entry of default without the simultaneous entry of judgment.) The May 27 judgment was subject to being re-opened until September 27, 1987.
The plaintiff has shown that the delay in notice to Western World did not cause Western World to suffer any material prejudice. As a result, Western World is not discharged from liability under its policy issued to J.Q. Ann, Inc. and Robert J. Smith and the plaintiff here is entitled to judgment against Western World. The parties differ, however, as to the amount of judgment to be entered.
The amount of the default judgment was $75,000. and the plaintiff seeks judgment against Western World for the entire judgment amount plus interest at the legal rate from the date of judgment pursuant to Conn. Gen. Stat. 37-3a. The defendant Western World contends, however, that under the Dram Shop Act, Conn. Gen. Stat. 30-102, the plaintiff's recovery is limited to $20,000.
The complaint in the action by Augustyniak against J.Q. Ann, Inc. and Smith contained two counts. The first count alleges that the plaintiff was injured as the result of the defendants' sale of liquor to an already intoxicated person who assaulted the plaintiff. The second count alleges that the defendants were negligent by failing to use reasonable care to protect their patrons from assault, by allowing a boisterous and aggressive patron to remain on the premises and in other respects. A careful reading of the second count shows that it makes no allegations relating to the sale or consumption of liquor. When the $75,000. judgment was entered, the court did not specify whether the judgment was entered on the first or second counts.
The plaintiff apparently concedes that any judgment entered on the first count would be subject to the $20,000. Dram Shop limitation. The plaintiff argues, however, that the second count, based on negligence, would not be subject to the $20,000. limitation and that the Western World policy must be construed to cover the loss. The plaintiff's contention cannot be sustained. CT Page 1378
The Western World policy insured against liquor liability claims only. By its terms, the company agreed to pay claims "imposed upon the insured by reason of the selling, serving or giving of any alcoholic beverage at or from the insured premises." Western World's liability is therefore limited to the first count, which is subject to the $20,000. limit. The second count makes no allegations concerning liquor. (Even if such allegations were made, it must be noted that our state refuses to recognize a common law cause of action for negligence from the sale of alcohol. Quinnett v. Newman, 213 Conn. 343 (1990).) The fact that the Western World policy provided $100,000. in coverage does not operate to alter the clear statutory limitation of recovery to $20,000. Conn. Gen. Stat. 30-102. The policy provided sufficient coverage to satisfy multiple Dram Shop claims during the one year term of the policy.
The plaintiff also seeks an award of interest on the judgment under Conn. Gen. Stat. 37-3a. The terms of the Western World policy obligate the company to pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid. . . ." Although the provision as written applies to actions which are defended by the company, the court has found that Western World is liable for the plaintiff's claim and that the company breached its obligation under the policy. Implicit in these findings is the act that the defendant should have defended the suit brought by the plaintiff and its failure to pay caused the judgment to remain unpaid. The court finds that an award of interest is appropriate.
Judgment is entered for the plaintiff against the defendant Western World Insurance Company or $20,000. plus interest at the legal rate from May 27, 1987 to the date of the entry of judgment, plus costs.
Christine S. Vertefeuille, Judge