24 F.3d 245
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Joseph DADON, Plaintiff-Cross-Defendant-Appellee,
Sylvia Dadon; Dadon Marketing, Inc., Cross-Defendants-Appellees,
v.
Milton LEVINSON, Defendant-Cross-Claimant-Appellant.
Joseph DADON, Plaintiff-Cross-Defendant-Appellant,
and
Dadon Marketing, Inc., Cross-Defendant-Appellant,
v.
Milton LEVINSON, Defendant-Cross-Claimant-Appellee.
 Nos. 92-55710, 92-55810.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided May 5, 1994.
 
 1
 Before: WIGGINS, T.G. NELSON, Circuit Judges and REED*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This diversity action arises out of a contract between Levinson and Dadon for the sale of Levinson's promotional sales business. The district court found that Dadon had breached the contract and awarded Levinson the balance due on the contract price. The district court also found that the interest provisions of the contract were uncertain, and thus denied Levinson prejudgment interest. In addition, the district court found that there was insufficient evidence to support Levinson's claims for additional damages, and thus denied him both of these remedies. Dadon and Levinson both appeal. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm in part and remand in part.
 
 BACKGROUND
 
 4
 After several months of discussion, Dadon agreed to buy Levinson's business, Advertising Promotes Sales. Levinson told Dadon that the business was grossing $700,000 annually in sales. The parties signed a contract consisting of four documents. As detailed below, the four documents contained interest provisions which conflict. The first document was a Letter of Agreement signed on April 4, 1989. Under the terms of the Agreement, Levinson agreed to sell the business for $125,000 under the following conditions. Dadon was to make a downpayment of $20,000. Thereafter, Dadon was to pay the balance by paying 6% of his gross sales each year until the remaining $105,000 was paid. Thus, the annual payments were to be determined by, and were contingent on, the amount of future gross receipts. If any payment were owed but not made within 30 days of its due date, interest would be owed on the amount of the installment payment due, payable at a rate of 10% per annum.
 
 
 5
 The second document, also signed on April 4, 1989, was a Promissory Note for $105,000. Dadon agreed to pay Levinson $105,000 with no interest by paying 6% of Dadon's gross sales from the business until the $105,000 had been paid in full. If any payment was not made within 30 days of its due date, interest would be owed on the amount of the installment payment due, payable at the rate of 10% per annum. If any payment was not made within 60 days of its due date, the entire indebtedness, both principal and interest, would become due and payable immediately. Similarly, if Dadon were to sell or transfer the business, the entire indebtedness, both principal and interest, would become due and payable immediately.
 
 
 6
 The third document, signed on April 12, 1989, was a handwritten amendment to the Letter of Agreement. It appears that Dadon agreed to pay Levinson interest on the principal. If the prime rate dropped below 10%, then interest would be reduced to equal prime; if prime exceeded 10%, then interest would equal 10%. Finally, the fourth document, signed on May 9, 1989, was a second amendment to the Letter of Agreement. It provided, "The same 10% formula will prevail as noted in our previous agreement."
 
 
 7
 Dadon operated the business from April 4, 1989 until December, 1989, generating approximately $300,000 in gross sales. Because revenues were significantly lower than Dadon had projected, Dadon entered into an agreement with Brown & Bigelow to service the Advertising Promotes Sales accounts.
 
 
 8
 Dadon never paid Levinson any money in addition to the $20,000 downpayment. Instead, Dadon sued Levinson for breach of contract, fraud and rescission. Levinson cross-complained against Dadon. Levinson alleged that Dadon both breached the contract and engaged in fraud to induce Levinson to sell the business to him.
 
 
 9
 The district court first found that there was insufficient evidence to support either party's claim of fraud and thus determined that the matter would be treated purely as a contract action. Next, the district court found that the contract was for $125,000 and that Dadon had paid only $20,000 in downpayment. Dadon had not even made the first installment payment. Thus, Dadon had breached the contract. In addition, the district court ruled that Dadon's hiring of Brown & Bigelow constituted a transfer which was also in breach of contract. Accordingly, the district court granted Levinson judgment for $105,000 (the balance due on the contract price), plus attorneys' fees and costs.
 
 
 10
 The district court denied Levinson prejudgment interest, however, because the interest provisions in the contract's four documents conflicted. The district court ruled, "I refuse to give that interest. There are just too many queries in this whole case." In addition, the district court denied Levinson's claim for additional damages or an accounting, finding that there was "no supportable evidence" that any other monies were owed.
 
 DISCUSSION
 
 11
 I. Did Dadon breach the contract?
 
 
 12
 We review the district court's findings for clear error. Kruso v. ITT Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 
 13
 Under the terms of the contract, Dadon owed Levinson at least $18,000 in his first payment because the Advertising Promotes Sales accounts generated $300,000 in gross sales between April 1989 and December 1989. (We do not know the actual amount owed by Dadon because the parties discuss only the revenue generated as of December, which is four months short of the fiscal year set forth in the contract (April 4th to April 3rd). The $300,000 figure is, in fact, irrelevant.)
 
 
 14
 Dadon argues that he had already made an initial payment of $20,000 in downpayment. Consequently, he did not owe Levinson any money at the time Dadon brought his lawsuit. Thus, Dadon concludes that he did not breach the contract, even though he did not make a first installment payment.
 
 
 15
 Dadon also argues that he did not breach the contract by entering into an agreement with Brown & Bigelow because his agreement with Brown & Bigelow did not constitute a sale or transfer of the business. Dadon points to the following to support his contention that there was no sale or transfer. First, Dadon received no consideration up front from Brown & Bigelow. Second, neither title nor possession of the business was transferred to Brown & Bigelow. Third, the agreement was subject to cancellation by either side on four months' notice. In fact, Dadon argues, this arrangement is identical to the situation in which a business hires a salesperson to work in return for a commission. Thus, Dadon concludes, the district court's finding that his agreement with Brown & Bigelow constituted a sale or transfer of the business is clearly erroneous.
 
 
 16
 Dadon's first argument is frivolous. There is nothing in the contract to suggest that the downpayment may be offset against the first installment payment. Nor is this a common business practice. Dadon owed Levinson at least $18,000 after the first year. Dadon breached the contract by failing to make this first installment payment.
 
 
 17
 Dadon is correct, however, that the district court clearly erred by finding that the Brown & Bigelow agreement constituted a sale or transfer. We have not found any evidence in the record to support this finding. See Delgado v. Heckler, 722 F.2d 570, 571 (9th Cir.1983). Nor did the district court judge provide any insight into his reasoning. Notwithstanding this clearly erroneous finding, the district court's finding that Dadon breached the contract is nonetheless proper because of Dadon's failure to make the first installment payment.
 
 
 18
 II. Prejudgment Interest?
 
 
 19
 Levinson contends that, by refusing to award prejudgment interest under the contract, the trial court failed to apply Connecticut law. Specifically, Levinson argues, interest is a recognized form of damages when interest has been incorporated into the original contract. See Ruscito v. F-Dyne Electronics Co., 177 Conn. 149, 163, 411 A.2d 1371, 1378 (1979). Furthermore, Connecticut appellate courts have found a district court's denial of interest to be reversible error when interest is provided for in the contract. Guaranty Bank & Trust Co. v. Dowling, 4 Conn.App. 376, 494 A.2d 1216, 1221-22, certification dismissed, 197 Conn. 808, 499 A.2d 58 (1985). Thus, Levinson argues, the district court erred by declining to award the interest due under the contract on the principal sum unpaid ($105,000) from the date of contract to the date of trial.
 
 
 20
 Dadon argues that an examination of the interest provisions in the four documents shows that the provisions are, as the district court noted, conflicting. For example, under the Letter of Agreement and Promissory Note, if an installment payment arises and then is not paid within 30 days of the due date, interest is owed on the amount of the installment payment due. But, under the First Letter Amendment, regardless of whether an installment payment arises or whether there is a default, interest is owed on the amount of the remaining principal. Therefore, Dadon concludes, the district court properly declined to enforce the interest provisions and thus properly denied prejudgment interest. See Steinberg v. Reding, 24 Conn.App. 212, 214, 587 A.2d 170, 172 (1991) (noting that, to be enforceable, the terms and requirements of a contract must be definite and certain); Augeri v. C.F. Wooding Co., 173 Conn. 426, 429-30, 378 A.2d 538, 540 (1977) (same).
 
 
 21
 We review de novo the district court's construction of contract language. Miller v. Safeco Title Ins. Co., 758 F.2d 364, 367 (9th Cir.1985); Dillingham Shipyard v. Associated Insulation Co., 649 F.2d 1322, 1326 (9th Cir.1981). Levinson is correct in pointing out that a district court must apply the interest rate provided for in the contract. See Ruscito, 177 Conn. at 163, 411 A.2d at 1378. More generally, contract law provides that contracts should be enforced as written and that contracting parties are bound by the contractual provisions to which they have given their assent. Aetna Casualty & Sur. Co. v. Murphy, 206 Conn. 409, 412, 538 A.2d 219, 221 (1988). Furthermore, clauses that impose conditions upon contractual liability are among the provisions for which the parties may bargain. Id. The four documents clearly show that, at the very least, the parties agreed that Levinson would be paid interest if an installment payment were paid more than 30 days after the due date. Having never made any payment, Dadon is clearly more than 30 days delinquent. Thus, at a minimum, Levinson should have been awarded interest on the first installment payment which was due on April 3, 1990. What is unclear is whether the parties also agreed that Levinson would be paid interest on the entire balance due.
 
 
 22
 On the other hand, Dadon is also correct that the contract provisions regarding interest are ambiguous. See Steinberg, 24 Conn.App. at 214, 587 A.2d at 172. But, the district court should have received parol evidence to clarify the ambiguity. See Ruscito, 177 Conn. at 160, 411 A.2d at 1377; W.G. Maltby, Inc. v. Associated Realty Co., 114 Conn. 283, 289, 158 A. 548 (1932). We remand to the district court to establish what the parties intended. Only then can the district court determine what amount of prejudgment interest Levinson is entitled to under the contract.
 
 
 23
 III. Damages or Accounting?
 
 
 24
 Levinson argues that the district court erred by failing to award him damages in addition to the $105,000, or, alternatively, to order an accounting. Levinson asserts that Dadon retained the receivables from the sales generated by the Advertising Promotes Sales accounts; but, under the contract, Levinson is entitled to 6%. Thus, Levinson alleges, he has been only partially compensated. To be fully compensated, Levinson argues, he deserves to be put in the same position he would have been in had the contract been performed. Beckman v. Jalich Homes, Inc., 190 Conn. 299, 460 A.2d 488, 494 (1983); Dooley v. Leo, 184 Conn. 583, 440 A.2d 236, 238 (1981). Specifically, he deserves "either damages or accountings for percentages of sales, interest on accounts receivable, and the receivables themselves." Thus, Levinson concludes, the matter should be remanded to the district court for further proceedings.
 
 
 25
 Levinson's argument is without merit. Levinson has a claim to a percentage of gross sales under the contract for the sole purpose of facilitating payment of the $105,000; he has no other claim to the sales. While he is correct that he deserves to be put in the same position he would have been in had the contract been performed, with the award of the $105,000 he has been put in that position. Specifically, he has been given the full contract price.
 
 
 26
 IV. Did the district court fail to rule on all issues raised by the parties?
 
 
 27
 Levinson contends that the district court erred by not using the Joint Pre-Trial Order prepared three months before trial. Rather than tracking the Joint Pre-Trial Order, the district court's Findings of Fact and Conclusions of Law follow its rulings from the bench. As a result, Levinson asserts, the district court's Findings of Fact and Conclusions of Law "are either vague or non-existent to the issues raised."
 
 
 28
 The district court's Findings of Fact and Conclusions of Law did address all of the contested matters at trial. Levinson did not identify any issue actually raised at trial which the district court failed to address orally or in the Findings of Fact and Conclusions of Law. In addition, the district court is required only to make brief, definite and pertinent findings of fact and conclusions of law on contested matters. Rayonier, Inc. v. Polson, 400 F.2d 909, 923 (9th Cir.1968). Finally, Levinson is responsible for any inadequacies in the Findings of Fact and Conclusions of Law because Levinson prepared them.
 
 CONCLUSION
 
 29
 For the foregoing reasons, we affirm in part and remand in part. Dadon did breach the contract by failing to make the first installment payment. Dadon did not, however, breach the contract by entering into an agreement with Brown & Bigelow. In addition, the district court properly denied Levinson additional damages and an accounting because Levinson had already been fully compensated. By awarding him the balance due on the contract price ($105,000), the district court put Levinson in the same position he would have been in had Dadon fully performed. Finally, the district court did properly consider all of the issues presented.
 
 
 30
 The district court acted improperly, however, in denying Levinson prejudgment interest. Under the terms of the contract, Levinson is entitled to some prejudgment interest. While the contract provisions regarding interest are unclear, the district court should have determined what the parties intended. We remand to the district court to calculate the amount of prejudgment interest owed to Levinson.
 
 
 31
 AFFIRMED IN PART and REMANDED IN PART.
 
 
 
 *
 Hon. Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3