## TWENTY-FOUR MERRILL STREET CONDOMINIUM ASSOCIATION, INC. *v.* MICHAEL W. MURRAY ET AL.
## (AC 25688)

Flynn, C. J., and Rogers and Hennessy, Js.

Argued March 29—officially released July 25, 2006

*Michael W. Murray,* pro se, the appellant (named defendant).

*J. Christopher Kervick,* for the appellee (plaintiff).

*Opinion*

ROGERS, J. In this action to foreclose a statutory lien, the defendant Michael W. Murray[1] appeals from the judgment of the trial court rendered in favor of the plaintiff, Twenty-Four Merrill Street Condominium Association, Inc. The defendant claims that (1) the present action is barred under the doctrine of res judicata

---

[1] Also named as defendants in the plaintiff's complaint were George F. Murray, John Doe and Jane Doe, none of whom are parties to this appeal. We therefore refer to Michael W. Murray as the defendant in this opinion.

and (2) the court's finding that the plaintiff complied with the notice requirement of its bylaws is clearly erroneous, thereby rendering the statutory lien invalid. We affirm the judgment of the trial court.

The relevant facts are as follows. On April 18, 2000, the plaintiff commenced a foreclosure action against the defendant and George F. Murray, owners of unit C-3 at the Twenty-Four Merrill Street Condominium in Hartford, stemming from their failure to pay common charges due to the plaintiff.[2] A judgment of strict foreclosure subsequently entered against the defendant and George Murray on September 5, 2000. The court found the debt to be $1845 and set a law day of December 18, 2000, on which date the judgment was satisfied.

The plaintiff instituted a second foreclosure action on December 13, 2001, from which the present appeal originates. The complaint alleged a new debt of $3775 due to the plaintiffs under General Statutes § 47-258.[3] The statutory lien involved fines and repair charges arising from the allegedly faulty plumbing in unit C-3 that damaged other units; it did not concern common charges. The defendant and George Murray responded by filing an answer, six special defenses and a three count counterclaim, and a court trial followed. By memorandum of decision, the court found "that the [defendant and George Murray] did, in fact, have faulty plumbing in [unit C-3], which leaked, causing damage to at least one apartment below it. It further finds that the [defendant and George Murray] failed to repair the plumbing, forcing the plaintiff to have the leakage repaired in November, 2001. The plaintiff levied fines in accordance with its bylaws for the defendant's [and

[2] It is undisputed that the statutory lien in that action pertained solely to unpaid common charges.

[3] General Statutes § 47-258 (a) provides in relevant part that "[t]he association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. . . ."

George Murray's] refusal to pay for the repairs."[4] At the same time, the court also noted that "article XVI of the plaintiff's bylaws . . . requires written notice of the proposed (assessment) procedure to all owners affected." In light of the evidence presented at trial, the court found that such notice was provided to the defendant, but not to George Murray. Accordingly, the court rendered judgment in George Murray's favor. The court found in favor of the plaintiff against the defendant, and rendered judgment of strict foreclosure on his interest in the property. From that judgment, the defendant now appeals.

## I

The defendant first claims that the present action is barred under the doctrine of res judicata. Whether that doctrine applies to the facts of this case presents a question of law. Our review, therefore, is plenary. See *Gaynor* v. *Payne*, 261 Conn. 585, 595, 804 A.2d 170 (2002).

"The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 401, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). "[T]he doctrine of res judicata . . . [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] *on the same claim.*" (Emphasis added; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 191, 680 A.2d 1243 (1996). Accordingly, the salient inquiry is whether the present matter involves the same claim that was litigated in the prior action. We conclude that it does not.

---

[4] The defendant does not challenge those factual determinations on appeal.

It is true that, in both actions, the plaintiff sought to foreclose on a statutory lien pursuant to § 47-258. That commonality, however, does not render the actions one and the same. Rather, as the court found, the prior action concerned a statutory lien for common charges, whereas the present action involved a statutory lien for fines and repair costs. The defendant does not dispute that factual finding.[5] Instead, he insists that because the plaintiff's action is predicated on § 47-258, it necessarily "should have been included in the prior action." The defendant has provided no authority for the proposition that a condominium association with two statutory liens against a condominium owner is compelled to litigate those distinct claims in the same proceeding under the doctrine of res judicata.

"Res judicata . . . prevents a litigant from reasserting a claim that has already been decided on the merits." (Internal quotation marks omitted.) *Daoust* v. *McWilliams*, 49 Conn. App. 715, 723, 716 A.2d 922 (1998). Whether the fines and repair costs levied against the defendant due to faulty plumbing in unit C-3 constituted a valid statutory lien was not a subject of the prior action. As such, the court properly concluded that res judicata did not bar the present proceeding.

II

The defendant next challenges the court's finding that the plaintiff complied with the notice requirement of its bylaws.[6] "[W]here the factual basis of the court's

---

[5] The defendant concedes in his appellate brief that "[t]his earlier action was filed to foreclose a lien for [seven] months of common expenses . . . ." In his June 30, 2004 trial brief, the defendant stated that the present action involves a lien that "consists of a fine in the amount of $2,775.00 and the amount of $1,000.00 charged by R & L Enterprises for work performed in the [defendant's] unit."

[6] The defendant also notes that proper notice was not provided to George Murray. The court made such a finding in its memorandum of decision and rendered judgment in George Murray's favor, a finding the plaintiff does not contest on appeal. Moreover, George Murray is not a party to this appeal. Thus, the issue before us is whether the plaintiff provided proper notice of its assessment to the defendant.

decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Owens* v. *New Britain General Hospital*, 229 Conn. 592, 609, 643 A.2d 233 (1994).

Article XVI of the plaintiff's bylaws requires written notice of both the proposed action and the ultimate decision thereon. Section 16.02 states in relevant part that "[t]he party proposing to take the action . . . shall give written notice of the proposed action to all [u]nit [o]wners or occupants of [u]nits whose interests would be significantly affected by the proposed action. The notice shall include a general statement of the proposed action and the date, time and place of the hearing. . . . The affected [p]erson shall be notified of the decision within thirty days in the same manner in which notice of the meeting was given." That section replicates almost verbatim § 24.2 of the Connecticut Common Interest Ownership Manual (1984). The commentary to that section explains that it "sets up simple due process procedures for the association. It gives unit owners a chance to be heard before any fines or penalties are imposed on them." The defendant concedes that he received proper notice of the proposed action and the date of the hearing. Nevertheless, he chose not to attend the March 13, 2000 hearing. The defendant argues that because he did not receive notice of the plaintiff's *decision* within thirty days, the statutory lien is invalid.

The plaintiff acknowledges that notice of its decision was not provided to the defendant within thirty days, but rather was sent nine months later.[7] It therefore failed to comply with the thirty day notification requirement of § 16.02. Consequently, the court's finding that the plaintiff fully complied with the bylaws' notice requirement is clearly erroneous.

That determination does not end our inquiry. The validity of the statutory lien is our central focus in resolving the defendant's claim. The plaintiff maintains that, as notice of the decision ultimately was provided to the defendant prior to the commencement of this action, the delay in notification resulted in no prejudice to him. We agree. If the lack of notice claim of a criminal defendant, whose very liberty is at stake, may be subject to a harmlessness analysis; see, e.g., *State* v. *Ramirez*, 94 Conn. App. 812, 819, 894 A.2d 1032 (improper amendment of information implicates defendant's constitutional right to fair notice of charges against him; state, thus, must prove impropriety harmless beyond reasonable doubt), cert. denied, 278 Conn. 915, 899 A.2d 621 (2006); surely the claim of a civil defendant in a case such as this, who has a purely pecuniary interest at stake, may be subject to a similar analysis.

Significantly, this is not a case in which the defendant never received notice of the plaintiff's decision. He merely received late notice. The defendant posits that this irregularity requires an invalidation of the statutory lien and reversal of the judgment of the trial court. We do not agree. The concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter. See, e.g., *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94

---

[7] At trial, counsel for the plaintiff stated that "[the defendant] wasn't even notified of the [March 13, 2000 decision] until January 7, [2001]."

L. Ed. 865 (1950); *Bridgeport* v. *Plan & Zoning Commission*, 277 Conn. 268, 279, 890 A.2d 540 (2006); *Edward Balf Co.* v. *East Granby*, 152 Conn. 319, 325–26, 207 A.2d 58 (1965). Notice is not a rigid concept. Section 2 of the Restatement (Second) of Judgments, entitled "Adequate Notice," states in relevant part that "[a]n action may proceed without notice to a person interested therein when . . . (c) [t]he person is afforded an adequate subsequent opportunity to protect his interest." 1 Restatement (Second), Judgments § 2 (4) (c), p. 34 (1982). It further explains that "[t]he modern approach to notice-giving attaches primary importance to actual notice and treats technical compliance with notice procedures as a secondary consideration. . . . To invalidate the notice simply because it is irregular is to protect no worthwhile interest of the party who has raised the objection. He has had his due. An objection to the notice on his part serves only to induce concern for punctilious adherence to formality . . . ." Id., § 3, comment (b), pp. 50–51.

Our Supreme Court has considered the issue of mechanistic compliance with notice provisions in other contexts. In *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 412, 538 A.2d 219 (1988), the court considered for the first time the question of "what role prejudice, or its absence, should play in the enforcement of . . . standard [notice] clauses in insurance policies." That case involved delayed compliance by the insured party with the notice provisions of an insurance contract. Writing for the court, then Chief Justice Peters began by noting the conflict between two competing precepts of contract law. Although "contracts should be enforced as written"; id., 412; "the rigor of this traditional principle of strict compliance has increasingly been tempered by the recognition that the occurrence of a condition may, in appropriate circumstances, be

excused in order to avoid a 'disproportionate forfeiture.'" Id., 413. The court continued: "Something, doubtless, may be said on the score of consistency and certainty in favor of a stricter standard. The courts have balanced such considerations against those of equity and fairness, and found the latter to be the weightier." (Internal quotation marks omitted.) Id., 415.

The court focused on the purpose of notice provisions in insurance contracts, which it defined as providing the insurer the opportunity to undertake a timely and adequate investigation of the matter. Id., 417. "If this legitimate purpose can be protected by something short of automatic enforcement of the notice provisions," the court reasoned, "then their strict enforcement is unwarranted." Id. It thus held that the determination of what significance attaches to noncompliance with a notice provision "requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice . . . ."[8] Id., 417–18.

If it is proven that the delay did not prejudice the insurer, the insurance coverage is not forfeited. Id., 418. That reasoning informs our analysis of the defendant's claim.

We therefore consider the prejudice suffered by the defendant as a result of the late notice of the plaintiff's decision. The plaintiff correctly points out that, following its decision to assess fines and repair costs to the defendant, no collection efforts were undertaken prior to its January 7, 2001 notice. Moreover, the complaint in this matter was filed on December 13, 2001, almost one year *after* notice issued to the defendant. At oral

---

[8] "Literal enforcement of notice provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages." *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 418.

argument before this court, the defendant was asked what prejudice he suffered as a result of the delay in notification. He answered, "none." We agree with his appraisal. Accordingly, we conclude that although the court erroneously found that the plaintiff provided timely notice of its decision pursuant to the bylaw mandates, that finding has no bearing on the validity of the statutory lien, as the delay in notice resulted in no prejudice to the defendant under the particular circumstances of this case.

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.