ANTHONY J. TARICANI, JR., ET AL. *v.* NATIONWIDE
MUTUAL INSURANCE COMPANY
(AC 23280)

Lavery, C. J., and Foti and Peters, Js.

Argued March 25—officially released May 27, 2003

*Linda Clough,* for the appellants (plaintiffs).

*Kristen Schultze Greene,* with whom was *Michael Feldman,* for the appellee (defendant).

*Opinion*

PETERS, J. In this state, an insurance policyholder who fails to give an insurer timely notice of an insurable loss does not forfeit his insurance coverage if he can prove that his delay did not prejudice his insurer. *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 417–18, 538 A.2d 219 (1988). The principal issue in this case is whether this rule should be extended to protect a policyholder who has failed to comply with a cooperation clause in the insurance policy. This is an issue of first impression. The trial court declined to extend the rule and granted a motion for summary judgment filed by the insurer. We disagree with the court's reasoning but affirm its judgment in favor of the insurer in light of the factual record in this case.

The plaintiffs, Anthony J. Taricani, Jr., and Bonnie E. Taricani, filed a complaint alleging that the defendant, Nationwide Mutual Insurance Company, had issued to them a business insurance policy that was in effect

when a fire destroyed their property at 120 Winthrop Street in New Britain. They further alleged that, in breach of this policy, the defendant wrongfully had refused to pay them for the losses that they had incurred because of the fire.[1]

In response, the defendant filed an answer and a special defense in which it claimed that the plaintiffs' recovery was barred by their failure to cooperate with the defendant in its investigation of their claim.[2] The gravamen of the defendant's position was that, in violation of a cooperation clause in the insurance policy, the plaintiffs had declined to appear for examination under oath for a significant period of time after the occurrence of the fire. On this ground, the defendant filed a motion for summary judgment.

The plaintiffs objected to the defendant's motion. They filed an affidavit alleging the existence of numerous unresolved issues of material fact. These factual issues were relevant, they claimed, because they had no duty to appear for examination until preliminary criminal proceedings concerning their possible complicity in the fire were resolved in their favor.

The trial court, concluding that the defendant was entitled to judgment as a matter of law, granted the defendant's motion for summary judgment. The plaintiffs have appealed.

---

[1] The complaint also contained three other counts, alleging that the defendant's failure to pay was a breach of the implied covenant of good faith and fair dealing; a violation of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq.; and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The trial court, *Shortall, J.*, struck those counts. The plaintiffs have not challenged that decision.

[2] The defendant also filed four other special defenses, alleging that the plaintiffs had intentionally set the fire, had made material misrepresentations about their claim, had failed to protect their property after the fire and had failed to mitigate their damages.

The trial court made the following findings of fact that are undisputed. The plaintiffs' property was destroyed by fire on May 5, 2000. They filed a claim under a business insurance policy issued by the defendant. That policy required the plaintiffs to cooperate in the investigation of a claim and authorized the defendant to examine any insured under oath.

On July 11, 2000, the defendant notified the plaintiffs that they had to appear for examinations of their claims on July 25 and July 26, 2000. The defendant also asked the plaintiffs to produce certain documents by July 20, 2000. At the plaintiffs' request, the defendant agreed to reschedule the oral examinations for August 9 and August 11, 2000.

On July 25, 2000, the plaintiffs informed the defendant that they could not comply with its requests. At that time, the New Britain police department had begun a criminal investigation to determine whether the plaintiffs had committed arson. In conjunction with that investigation, the police had obtained a search warrant and had seized the documents requested by the defendant. They offered to cooperate fully once the police investigation had been concluded.

The defendant nonetheless, by a letter dated August 11, 2000, rescheduled the date of the oral examinations for August 23 and August 25, 2000. It informed the plaintiffs that it needed to conduct a prompt investigation of the plaintiffs' loss "before evidence disappears and memories fade . . . ." Accordingly, it advised the plaintiffs that, if they failed to appear on the scheduled dates, their inaction would be treated as a deliberate breach of a material condition in the policy.

After the plaintiffs' failure to appear, the defendant notified them, by a letter dated September 11, 2000, that their claim for coverage had been denied. The

notice stated that the plaintiffs' nonappearance was the reason for the denial of coverage.

Some months later, the criminal investigation was concluded. It exonerated the plaintiffs. The plaintiffs wrote to the defendant on March 15, 2001, indicating their readiness to produce the requested documents and to submit to examinations under oath. On April 10, 2001, the defendant, reiterating the position that it had taken in its September 11, 2000 letter, declined to proceed further.

The plaintiffs then initiated this lawsuit. They claimed that their refusal to submit to examinations under oath was justified by the criminal investigation that was then ongoing. They also challenged the defendant's assertion that there were no undisputed questions of material fact by alleging that the defendant's immediate access to the site and to police and fire reports afforded the defendant a significant opportunity to investigate the circumstances of the fire promptly. They alleged that those facts, if proven, would support their argument that the defendant was not prejudiced by the eight month delay in their personal cooperation with the defendant's investigation.

The trial court nonetheless granted the defendant's motion for summary judgment. It found that the plaintiffs had failed to comply with the policy's cooperation clause by their refusal to submit to examinations under oath in July or August, 2000. It was not persuaded by the plaintiffs' argument that, because the policy did not contain an express time limitation clause, their offer to be examined in March, 2001, demonstrated their compliance with the cooperation clause. It declined to adopt the plaintiffs' claim that their noncooperation was not dispositive if the defendant could be shown to have suffered no prejudice because of the delay in the conduct of the examinations under oath.

The plaintiffs' appeal challenges the court's summary judgment in two respects. They maintain that they had substantially cooperated with the defendant's request for examinations under oath and that whatever delay was caused thereby did not prejudice the defendant.

The plaintiffs' appeal is governed by a well established standard of appellate review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 75 Conn. App. 560, 564, 816 A.2d 728 (2003); see also *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003).

I

THE COOPERATION CLAUSE

The plaintiffs' first claim is that the record presents genuine issues of fact about their compliance with the cooperation clause in the insurance policy issued to them by the defendant. Those alleged issues of fact arise, they claim, because they should be permitted to

make a factual showing that they substantially complied with the cooperation clause. We disagree.

The plaintiffs acknowledge that, "absent estoppel, waiver or other excuse, the substantial or material breach of the cooperation provisions of the insurance policy by an insured puts an end to the insurer's obligation." *Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 675, 539 A.2d 138 (1988); see also *O'Leary* v. *Lumbermen's Mutual Casualty Co.*, 178 Conn. 32, 38, 420 A.2d 888 (1979). They recognize that, once the defendant raised the issue of violation of the cooperation clause, it was their burden to prove their compliance with the cooperation clause. *O'Leary* v. *Lumbermen's Mutual Casualty Co.*, supra, 38. They nonetheless claim that their failure to appear for prompt examinations under oath was not a substantial breach of the cooperation clause.

At the outset, we note what the plaintiffs do *not* claim. They have not characterized the cooperation clause as ambiguous.[3] In a similar vein, they have not challenged the timeliness of their receipt of notices sent to them by the defendant or the suitability of the location in which their examinations were scheduled to take place.

The gravamen of the plaintiffs' claim is that they substantially complied with the requirements of the cooperation clause by expressing their willingness to be examined under oath ten months after the occurrence of the fire that destroyed their property. In their view, their delayed agreement to be examined was

---

[3] In a section of the business property insurance policy entitled "Property Loss Conditions," the policy lists "Duties in the Event of Loss or Damage." This part of the policy requires the insured to "[c]ooperate with us in the investigation or settlement of the claim." It also states that "[w]e may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's statement must be signed."

excused because, while the criminal investigation into the fire was ongoing, they had a right to invoke the privilege against self-incrimination contained in the fifth amendment to the United States constitution. We disagree.

As the trial court noted, numerous cases in state courts, including our own Superior Court, have held that constitutional immunity from self-incrimination does not justify or excuse the obligation of an insured to cooperate in the prompt investigation of the event on which a claim of insurable loss is based. See, e.g., *Capello* v. *Aetna Life & Casualty Co.*, Superior Court, judicial district of Hartford, Docket No. 0510478 (April 12, 1993) (8 Conn. L. Rptr. 582, 583–84); *Warrilow* v. *Superior Court*, 142 Ariz. 250, 253–55, 689 P.2d 193 (1984); *Hickman* v. *London Assurance Corp.*, 184 Cal. 524, 529–31, 195 P. 45 (1920); *Mello* v. *Hingham Mutual Fire Ins. Co.*, 421 Mass. 333, 337–41, 656 N.E.2d 1247 (1995); *Standard Ins. Co. of New York* v. *Anderson*, 227 Miss. 397, 406–409, 86 So. 2d 298 (1956); *Dyno-Bite, Inc.* v. *Travelers Cos.*, 80 App. Div. 2d 471, 475–76, 439 N.Y.S.2d 558, appeal dismissed, 54 N.Y.2d 1027 (1981). We agree with the holdings of these cases.

The plaintiffs' position is, however, even less tenable than that of the noncooperating insureds discussed in the cases cited. The plaintiffs assume that they might defend against the duty to answer the defendant's questions by a blanket invocation of the privilege against self-incrimination. That assumption is incorrect. The federal courts uniformly have held that witnesses invoking the fifth amendment do not have a blanket right to refuse to testify but are obligated to answer those questions that they can answer and to make a specific claim of the privilege as to the rest. See, e.g., *Hoffman* v. *United States*, 341 U.S. 479, 486–87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951); *In re DG Acquisition Corp.*, 151 F.3d 75, 80–81 (2d Cir. 1998); *Nationwide Mutual Fire*

*Ins. Co.* v. *Dunkin,* 850 F.2d 441, 442–43 (8th Cir. 1988); *Anglada* v. *Sprague,* 822 F.2d 1035, 1037 (11th Cir. 1987); *North River Ins. Co.* v. *Stefanou,* 831 F.2d 484, 486–87 (4th Cir. 1987), cert. denied, 486 U.S. 1007, 108 S. Ct. 1733, 100 L. Ed. 2d 196 (1988); *United States* v. *Moore,* 682 F.2d 853, 856–57 (9th Cir. 1982); *National Life Ins. Co.* v. *Hartford Accident & Indemnity Co.,* 615 F.2d 595, 598 (3d Cir. 1980); *United States* v. *Johnson,* 577 F.2d 1304, 1311 (5th Cir. 1978); *United States* v. *Carroll,* 567 F.2d 955, 957 (10th Cir. 1977); *Maffie* v. *United States,* 209 F.2d 225, 229 (1st Cir. 1954).

We conclude, therefore, that, as a matter of law, the plaintiffs' failure to appear to be examined under oath was a breach of a material condition in their business property insurance policy. The language of the policy therefore justified the defendant's decision to decline the plaintiffs' claim for insurance coverage for the fire at their property.

## II

## PREJUDICE

The plaintiffs' second claim is that, even if they failed to comply with the cooperation clause, the defendant was not prejudiced by their default. They maintain that, as a matter of law, a showing of lack of prejudice is a defense to denial of their insurance claim because of their noncooperation. They further maintain that the affidavit that they submitted in their opposition to the motion for summary judgment alleged facts that, if proven, would substantiate their claim of lack of prejudice. Because of a factual dispute on the issue of prejudice, they claim that the trial court should not have granted the motion for summary judgment. We agree with their assertion of legal principle but we disagree that their affidavit was sufficiently factual to afford them the relief that they seek.

## A

We first address the plaintiffs' contention that, although their insurance policy makes noncompliance with the cooperation clause a basis for denial of their coverage claim, their noncompliance is excusable if the defendant was in no way prejudiced by their breach of this condition of the defendant's liability. This contention rests on the applicability of *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 409.

In *Murphy*, our Supreme Court held that an insured might be relieved from his contractual obligation to give his insurer timely notice of the occurrence of a loss if the insured could show that his delay in giving notice did not prejudice the insurer. Id., 417–18. The court first observed that the modern law of contracts seeks to accommodate the principle of strict compliance with contract conditions and the principle of avoiding a disproportionate forfeiture for a default that is not wilful.[4] Id., 412–13. The court cited *Jacob & Youngs, Inc.* v. *Kent*, 230 N.Y. 239, 242–44, 129 N.E. 889 (1921), in which Chief Judge Benjamin N. Cardozo stated: "Those who think more of symmetry and logic in the development of legal rules than of practical adaptation to the attainment of a just result will be troubled by a classification where the lines of division are so wavering and blurred. . . . The same omission may take on one aspect or another according to its setting. . . . We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 415.

*Murphy* held that a showing of the absence of prejudice would excuse a failure to give timely notice of the

---

[4] The defendant asserts that the plaintiffs' breach was intentional, i.e., wilful. The court made no such finding.

occurrence of an insurable loss for three reasons. First, because insurance policies are "contracts of adhesion," purchasers of such policies have no opportunity to bargain about the consequences of delayed notice. Id., 415–16. Second, because cancellation of an insurance policy for failure to give timely notice takes no account of past payments of premiums, possibly extending many years back, enforcement of these notice provisions may operate as a forfeiture. Id., 416. Third, although an insurer has a legitimate interest in guaranteeing itself a fair opportunity to investigate accidents, that interest can be protected without an irrebuttable presumption that late notice is always prejudicial to the insurer. Id.

It is difficult to see why the principle announced in *Murphy* should not be extended to this case. Both involve clauses in insurance contracts that are intended to afford an insurer a fair opportunity to investigate accidents presumptively covered by the insurance policy.

The trial court found this analogy unpersuasive. It relied on the fact that the notice clause and the cooperation clause do not serve identical purposes. The notice clause, the court held, is designed to enable prompt investigation of the accident, while the cooperation clause is designed to investigate the conduct of the insureds. The court further observed that strict enforcement of a cooperation clause could not result in a disproportionate forfeiture because the clause could not be invoked unless the insurer's demand for an examination was reasonable with respect to time, place and manner. Finally, it noted that, under other circumstances, delay in responding to a reasonable request for examinations under oath might be excused, although it cited no case in which such an excuse has been upheld.

The court relied on two cases in other jurisdictions that have declined to assign any significance to preju-

dice in the enforcement of a cooperation clause. These cases are, however, distinguishable because they involve an argument that the *insurer* must prove that delay by the insured prejudiced its investigation of the insured's claim. *United States Fidelity & Guaranty Co.* v. *Wigginton*, 964 F.2d 487, 490–91 (5th Cir. 1992); *Mello* v. *Hingham Mutual Fire Ins. Co.*, supra, 421 Mass. 336. That is not our law. Under *Murphy*, it is the *insured* who must establish that his delay did not cause prejudice to the insurer.

We conclude, therefore, that the principle underlying our decision in *Murphy* is equally applicable to the circumstances of this case. It may be that it will be more difficult for an insured to prove lack of prejudice in the context of a breach of a cooperation clause as compared with a breach of a notice clause. That difficulty does not persuade us to adopt a rule that would categorically deny the insured the opportunity to make the required showing.

## B

This case illustrates the problem that an insured faces in establishing the absence of prejudice. In addition to its legal conclusion that prejudice is irrelevant, the trial court also found that the plaintiffs had not included sufficient allegations with respect to the absence of prejudice in the affidavit that they filed in opposition to the defendant's motion for summary judgment. We agree with the court that the affidavit did not contain factual allegations that, if proven, would establish that their noncompliance with the cooperation clause caused no prejudice to the defendant.

The trial court addressed this issue as follows: "Although Anthony Taricani attests that the defendant was given prompt notice of the loss and had access to police and fire department investigation reports, he does not specify or explain, and the court fails to see,

how such factors protect the defendant's interests in promptly obtaining statements and proofs from the plaintiffs and cross-examining them upon such. Particularly in light of the plaintiffs' assertion of their fifth amendment privilege, it is illogical that many, if any, statements of the plaintiffs would be contained in the reports to which Anthony Taricani refers. At any rate, even if this were possible, the plaintiffs have failed to present any evidence that the reports contain such information as would sufficiently reduce the prejudice to the defendant stemming from staleness and faulty memories. The plaintiffs therefore have not sufficiently provided a factual basis for their claim of non-prejudice."

The plaintiffs argue nonetheless that they sufficiently raised other material questions of disputed fact about nonprejudice that made it improper for the trial court to grant the defendant's motion for summary judgment. We are not persuaded. While it is true that the defendant, having been informed promptly of the fire, might have been able to examine the property promptly, the plaintiffs do not consider the possibility that such access might have been limited during the ongoing police and fire investigation. The plaintiffs maintain that the police and fire reports to which the defendant had access would have been illuminating without identifying the illuminating information contained therein. The plaintiffs further suggest that the defendant might have obtained useful information by interviewing other witnesses, but in their affidavit they do not identify who these other witnesses were. Because their failure to comply with the cooperation clause is presumed to have been detrimental to the defendant's interests, they cannot rely on the *defendant's* failure to articulate the manner in which their delay impaired its investigation of the fire.

The absence of responsive factual allegations to rebut the defendant's allegations in its motion for summary judgment is fatal to the plaintiffs' appeal. It was the plaintiffs' burden to file an affidavit reciting relevant evidentiary matter to establish the existence of a genuine issue as to a material fact. Practice Book § 17-45; *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 217, 455 A.2d 857 (1983); *Faigel* v. *Fairfield University*, 75 Conn. App. 37, 43–44, 815 A.2d 140 (2003). They did not meet their burden.

We conclude, therefore, that the judgment in favor of the defendant must be affirmed. The plaintiffs did not present a valid excuse for their failure to comply with the cooperation clause in their insurance policy. As a matter of law, even in the absence of such an excuse, they would have had a viable claim for coverage of the damage that the fire caused to their property if they had been able to establish that their delay in presenting themselves for examination under oath did not result in any prejudice to the defendant. They failed, however, to file an affidavit with sufficient factual allegations to show that their delay in fact did not cause any prejudice. The trial court, therefore, properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.