## LIANA FIGUEROA *v.* ALLSTATE INDEMNITY COMPANY
### (AC 27492)

Flynn, C. J., and Harper and Dupont, Js.

Argued September 11, 2007—officially released January 29, 2008

*Steven L. Seligman,* for the appellant (plaintiff).

*Linda L. Morkan,* with whom, on the brief, were *Daniel F. Sullivan* and *Gerald P. Dwyer, Jr.,* for the appellee (defendant).

*Opinion*

PER CURIAM. This appeal follows the granting of a motion for summary judgment in favor of the defendant, the Allstate Indemnity Company (Allstate), in an action brought by the plaintiff, Liana Figueroa, as a judgment creditor, against Allstate, as an insurer, pursuant to General Statutes § 38a-321.[1] The primary issue is

---

[1] General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

whether coverage for a six month automobile liability insurance policy issued by Allstate to its insured, Fikret Siljkovic, was in effect on the date the insured's son, while driving his father's car, seriously injured the plaintiff.[2]

Allstate's motion for summary judgment was based on two grounds. The first was that there was no insurance coverage in effect when the plaintiff was injured. The second alternate ground was that Siljkovic had concealed material information, the fact that his son was a driving member of his household with a driver's license at the time Siljkovic applied for insurance, which fact nullified coverage. The court granted the motion on the first ground and, therefore, did not consider the second alternate ground. We affirm the judgment of the trial court.

Summary judgment is properly rendered when the pleadings, affidavits and any other proof show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, with the ultimate test being whether the movant would be entitled to a directed verdict on the same facts. *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 26–27, 930 A.2d 682 (2007). Our review is plenary, with the question being whether the court's decision to grant summary judgment is legally and logically correct and is supported by the material facts found as undisputed. *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 752–57, 905 A.2d 623 (2006); *Taricani* v.

---

[2] In order to prevail in an action brought pursuant to § 38a-321, judgment creditors must prove, as an element of the cause of action, that they were injured by a person who was insured by the defendant insurer at the time of their injuries. *DeRubbo* v. *Aetna Ins. Co.*, 161 Conn. 388, 390, 288 A.2d 430 (1971).

*Nationwide Mutual Ins. Co.*, 77 Conn. App. 139, 145, 822 A.2d 341 (2003).

Most of the facts are not in dispute. On September 21, 2001, Siljkovic went to the office of an Allstate insurance agent, Andrea Birmingham, accompanied by his eighteen year old daughter, Nihada Siljkovic, as an interpreter because he spoke English poorly,[3] to apply for insurance for his two cars. He sought automobile liability coverage for bodily injury ($20,000-$40,000), for property damage ($25,000) and for uninsured-underinsured motorists coverage ($20,000-$40,000) for each vehicle. He paid an estimated premium of $523.80 per vehicle plus a $30 nonrefundable policy fee for a total of $1077.60, which he charged to his MasterCard account.

The application he signed stated that there were two members of his household, he and his nondriver spouse, Adila Siljkovic. He did not list either Nihad Siljkovic, his seventeen year old son, or Nihada Siljkovic as occupants of the household or as drivers. The Connecticut driver's history for Nihad Siljkovic, which accompanied Allstate's motion for summary judgment, stated that he had obtained a Connecticut driver's license on July 27, 2000, and that he was seventeen years old as of September 21, 2001.

On September 26, 2001, Allstate mailed a notice of cancellation of the temporary insurance coverage to Fikret Siljkovic, a receipt for the delivery of which he signed on September 29, 2001. The stated reason for the cancellation was that Allstate could not obtain a "loss history record" or a "valid motor vehicle record" for Adila Siljkovic, and "[a]ddditionally, [it was] based in part on information contained in a credit report . . . ." The notice stated: "Your coverage will remain

___

[3] Affidavits in this case indicate that the agent entered the oral information given in Fikret Siljkovic's answers, as interpreted by Nihada Siljkovic, into a computer and that he signed the printed application that resulted.

in effect until the cancellation date and time shown above. However, in the event that any premiums are not paid when due, we may cancel your coverage prior to that cancellation date and time." The cancellation date in the notice was November 21, 2001, at 12:01 a.m.

On October 2, 2001, Birmingham sent a letter on Allstate's letterhead to Fikret Siljkovic, explaining that the policy obtained on September 21, 2001, had to be rewritten because Allstate did not have his wife's social security number. Birmingham did not state anything in the letter about needing more information about his credit, nor had the application for the coverage sought a social security number for Adila Siljkovic. The letter's second sentence was as follows: "Please bring in a copy of your wife's social security card, when you receive your refund check and we will rewrite the policy effective the date the first one cancels." It is this sentence on which the plaintiff relies on appeal to conclude that Fikret Siljkovic had coverage on November 22, 2001, the date she was injured.

Allstate refunded to Fikret Siljkovic $720.90 of the $1077.60 he had paid on September 21, 2001, by crediting his MasterCard account on September 27, 2001, thus charging him $356.70 for coverage from September 21 to November 21, 2001.[4] The record does not indicate the date that Fikret Siljkovic received his MasterCard statement first crediting the refund or if he had received a MasterCard statement between September 27 and December 5 or 6, 2001. Fikret Siljkovic returned to Birmingham's office on December 6, 2001, with his wife's social security number and obtained automobile insurance coverage with a different application number, a different premium for the same monetary coverage and a different expiration date. He again charged the premium to his MasterCard.

[4] There is no explanation in the record of how the refund of $720.90 or the charge of $356.70 was calculated.

On November 22, 2001, the plaintiff was struck while walking across a street by a motor vehicle owned by Fikret Siljkovic and driven by Nihad Siljkovic. On January 8, 2002, Allstate notified the plaintiff's lawyer that it would not provide coverage for the plaintiff's injuries because the Siljkovic policy had been terminated on November 21, 2001. Allstate did not defend the action brought by the plaintiff against Fikret Siljkovic. He was defaulted for failure to appear, and, at a subsequent hearing in damages, the plaintiff obtained a judgment of $4,358,269.36 for her economic and noneconomic damages.

The trial court noted certain facts that it deemed relevant in its memorandum of decision. The court reviewed the content of the October 2, 2001 letter and found that Fikret Siljkovic took no action as to it prior to November 21, 2001, at 12:01 a.m. and that, therefore, the policy was no longer in effect on November 22, 2001, the date of the accident. The court cited the deposition testimony of Fikret Siljkovic that he did not receive notice of a refund of his premium as provided in the October 2, 2001 letter until December 5 or 6, 2001, at which time he applied "for a second policy . . . ." The court then concluded that there was no evidence to support a "renewal of a second policy prior to the accident."

On appeal, the plaintiff claims that there is a genuine issue of material fact as to the date Fikret Siljkovic went to Allstate's agent, Birmingham, to renew or to rewrite his automobile liability insurance policy, which prevents Allstate from obtaining a summary judgment. She also claims that insurance coverage existed at the time of the accident because Allstate had promised in the October 2, 2001 letter that when Fikret Siljkovic received his refund check and brought a copy of his wife's social security card, Allstate would "rewrite the policy effective the date the first one cancels."

Before analyzing the rectitude of the court's rendering of summary judgment by using the often repeated standardized test, as previously outlined, it is important to recognize what this case does not concern. The plaintiff does not attack the validity of the notice of cancellation, effective on November 21, 2001. Thus, the plaintiff does not argue that Allstate's basis for the cancellation, namely, "information contained in a credit report," or the necessity of providing a "loss history record" or a "valid motor vehicle record" for Fikret Siljkovic's nondriving wife, Adila Siljkovic, violated General Statutes §§ 38a-341 or 38a-342 (a) or any regulation of the insurance commissioner adopted pursuant to General Statutes § 38a-334. The plaintiff also does not argue that Fikret Siljkovic did not receive the cancellation notice.[5]

Instead, the plaintiff argues on the basis of his deposition testimony and circumstantial evidence,[6] that there

[5] Fikret Siljkovic signed a receipt for the cancellation notice. In any case, General Statutes § 38a-343 (a) does not require the insurer to prove that the insured actually received the notice; it requires only that the notice was sent properly. See generally *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 880 A.2d 882 (2005).

[6] The plaintiff cites the following deposition testimony of Fikret Siljkovic, which she claims shows that he went back to the "Allstate [office] in Wethersfield and paid" "before the subject accident":

"Q. How soon after you found out they were canceling the insurance did you go back to Allstate?

"[The Defendant's Counsel]: Objection.

"[The Witness]: Of course, right away. As soon as I found out. As soon as I found out from the bank statement that the check from the insurance was not paid, right away I went to the insurance.

"Q. When you say, 'right away,' if you can, for me, Mr. Siljkovic, are we talking a matter of minutes? Hours? Days? How long?

"A. Of course, I went the same day. There's no reason for me to go into detail everything.

"Q. The same days as you received the notice?

"A. Yes.

"Q. And, again, that was the same day—

"[The Plaintiff's Counsel]: Tell him this is almost my last question. I'm almost done.

"[The Witness]: As soon as I received the notice that my insurance was canceled, that's when I decided to go right away to the insurance.

is a material issue of fact in dispute as to when Fikret Siljkovic went to Birmingham's office to renew or to rewrite his policy. She also argues that the letter of October 2, 2001, was a promise by Allstate to rewrite the policy "retroactively" upon the date of the cancellation of the prior policy, if Fikret Siljkovic brought in a copy of his wife's social security card when he received his refund check. The plaintiff cannot prevail on either of these claims.

The testimony of Fikret Siljkovic did not establish that he took any action prior to December 6, 2001, to extend his insurance coverage beyond November 21, 2001. All of the evidence indicates that he did not return to Allstate's office between September 21 and December 6, 2001. The date of his return to the office is not a material fact in dispute. Furthermore, the plaintiff's complaint did not allege that the October 2, 2001 letter

---

"Q. . . . Was that before Nihad's accident?

"[The Defendant's Counsel]: Objection.

"[The Witness]: Before."

Other deposition testimony by Fikret Siljkovic, as noted by Allstate, clarifies his testimony and indicates that he did not return to Allstate's agent's office until December 6, 2001:

"[The Plaintiff's Counsel]: What did you do when you found out that Allstate wanted to cancel your insurance?

"[The Defendant's Counsel]: Objection.

"[The Witness]: I went back to the insurance.

"[The Plaintiff's Counsel]: And what happened when you went back to the insurance?

"[The Witness]: I paid again.

"[The Plaintiff's Counsel]: How did you pay? Cash? Credit card?

"[The Witness]: One hundred percent, I don't know exactly. Maybe cash. . . .

"[The Plaintiff's Counsel]: When you went back and paid for the insurance with cash, was that before or after Nihad was in the accident, the motor vehicle accident?

"[The Witness]: After."

Allstate points out that there were two accidents, one in late December when Nihad Siljkovic was shot and killed and the other on November 22, 2001, when the plaintiff was injured.

was an offer by Allstate to amend, extend or reform the September 21, 2001 policy retroactively beyond November 21, 2001, at 12:01 a.m. The plaintiff, therefore, cannot prevail on her claim that the October 2, 2001 letter was a promise by Allstate to rewrite a liability insurance policy effective upon the cancellation of the prior policy if Fikret Siljkovic provided his wife's social security number. The plaintiff's complaint alleged only that the September 21, 2001 policy "was in full force and effect" on November 22, 2001, the date of the accident. Despite this allegation, in her appeal, the plaintiff concedes that the cancellation of the September 21, 2001 policy was effective. She maintains, however, that the new policy was in effect at the time of the accident. These allegations regarding the new policy, however, were not in her complaint, which was based solely on the alleged "full force and effect" of the September 21, 2001 policy.

The plaintiff conceded on appeal that she is not challenging the effectiveness of the November 21, 2001 cancellation by Allstate of the first policy. A second policy was issued effective December 6, 2001, with a different expiration date and a different premium well after the accident for which indemnity was sought, and, as stated, the plaintiff did not plead that rewriting or reformation of the original policy was accomplished by the second policy. Because there were no material facts in issue as to whether any automobile liability insurance coverage existed at the time of the plaintiff's injuries on November 22, 2001, the court properly rendered summary judgment in favor of Allstate.

The judgment is affirmed.