******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## AMICA MUTUAL INSURANCE COMPANY
*v.* MICHELLE LEVINE*

Superior Court, Judicial District of Hartford
File No. CV-16-6064569-S

Memorandum filed July 31, 2017

*Proceedings*

Memorandum of decision on plaintiff's motion for summary judgment. *Motion granted.*

*Ondi A. Smith*, for the plaintiff.

*Jennifer B. Levine*, for the defendant.

*Opinion*

SHAPIRO, J. This matter is before the court concerning the plaintiff Amica Mutual Insurance Company's motion for summary judgment (#104) (motion). The court heard oral argument concerning the motion on May 30, 2017. For the reasons stated below, the motion is granted.

I

## BACKGROUND

The defendant, Michelle Levine, was a covered person under an automobile liability insurance policy issued by the plaintiff, Amica Mutual Insurance Company, for the period December 1, 2010 to December 1, 2011 (policy). The defendant sought medical payments for treatment she claimed resulted from a December 6, 2010 motor vehicle accident (accident).

In the plaintiff's complaint, it seeks a declaratory judgment, finding that it has no duty to provide medical payment benefits to the defendant because she refused to undergo requested independent medical examinations (IMEs) with a physician selected by the plaintiff, which prejudiced the plaintiff's ability to properly evaluate the defendant's claim for such benefits.

The correspondence submitted concerning the motion shows that, in 2012 and 2013, the plaintiff made several requests for the defendant to submit to a medical examination, but the defendant never did so. See plaintiff's exhibit C; defendant's exhibits A, B, C, 23, 25 and 27. Additional references to the factual background are set forth below.

II

## STANDARD OF REVIEW

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that

demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 312–13.

### III

### DISCUSSION[1]

"[C]onstruction of a contract of insurance presents a question of law for the court . . . . It is the function of the court to construe the provisions of the contract of insurance. . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . . ." (Internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Bristol Heights Associates, LLC*, 142 Conn. App. 390, 405–406, 70 A.3d 74, cert. denied, 309 Conn. 909, 68 A.3d 662 (2013).

As discussed below, the policy contains provisions which require persons seeking coverage to cooperate with the insurer in its investigation of the claim and to submit to physical examinations by physicians it selected. "The purpose of the cooperation provision is to protect the interests of the insurer. . . . If insurers could not contract for fair treatment and helpful cooperation from the insured, they would at the very least, be severely handicapped in determining how and whether to contest the claim . . . ." (Citation omitted; internal quotation marks omitted.) *Arton* v. *Liberty Mutual Ins. Co.*, 163 Conn. 127, 134, 302 A.2d 284 (1972).

"A cooperation clause in a liability insurance policy requires that there shall be a fair, frank, and substantially full disclosure of information reasonably demanded by the insurer to enable it to prepare for, or to determine whether there is, a genuine defense. . . . [I]t has been held that an insured's failure to disclose information breached a cooperation clause [when] . . . [t]he insured . . . [failed] to provide information requested by the insurer." (Internal quotation marks omitted.) *Double G.G. Leasing, LLC* v. *Underwriters at Lloyd's, London*, 116 Conn. App. 417, 433, 978 A.2d 83, cert. denied, 294 Conn. 908, 982 A.2d 1082 (2009); see *Chicago Title Ins. Co.* v. *Bristol Heights Associates*, supra, 142 Conn. App. 409 (insured's failure to disclose information breached cooperation clause when insured failed to provide information requested by insurer).

"Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions . . . the breach generally results in the forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy." (Internal quotation marks omitted.) *Double G.G. Leasing, LLC* v. *Underwriters at Lloyd's, London*, supra, 116 Conn. App. 432.

"The lack of cooperation, however, must be substantial or material. . . . [T]he condition of cooperation with an insurer is not broken by a failure of the insured in an immaterial or unsubstantial matter. . . . [L]ack of prejudice to the insurer from such failure is a test which usually determines that a failure is of that nature." (Internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Bristol Heights Associates, LLC*, supra, 142 Conn. App. 408.

Here, the policy, page 11 of 14, provides, in relevant part: "Part E—Duties After an Accident or Loss: We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us . . . B. A person seeking any coverage must: 1. Cooperate with us in the investigation, settlement or defense of any claim or suit. . . . 3. Submit, as often as we reasonably require: a. To physical exams by physicians we select. We will pay for these exams." See plaintiff's exhibit A.

The plaintiff asserts that it reasonably requested that the defendant submit to an IME after review of the medical bills and reports forwarded by the defendant in late June, 2011, in connection with her claim made it was clear that the defendant had been treating for her medical condition prior to the accident. In September, 2011, the plaintiff requested a records review of the defendant's treatment by Dr. Mark Silk, a urologist, who concluded that, other than a temporal basis, it was difficult, if not impossible, to establish a relationship between the accident and defendant's subsequent medical course. See defendant's exhibit 24.

When the defendant was still treating a year and a half after the accident, and was still seeking medical payment benefits, the plaintiff requested that the defendant attend an IME by Dr. Silk, to ascertain whether the defendant's treatment was related to the accident. As an integral part of its investigation into the claim, the plaintiff made several requests that the defendant submit to such an IME.

In July, 2012, the defendant's attorney objected to the plaintiff's selected medical examiner/urologist on the basis that he had not been shown to be an expert who matched the defendant's out-of-state physician's expertise in interstitial cystitis, noting that "there appears to be no urologist in Connecticut who

match[es] Dr. [Robert] Moldwin's knowledge and expertise regarding this particular disease." See defendant's exhibit A, page 2 (letter dated July 18, 2012).

The plaintiff contends that the defendant did not have a reasonable excuse for failing to attend the IME and outlined a number of conditions which she demanded be satisfied before she would submit to the IME, none of which are afforded to her in the policy, such as (1) furnishing a copy of the doctor's resume; (2) that she either not fill out written questionnaires or be provided with the forms ten days in advance so that counsel may object to certain questions; (3) that she not be required to fill out any authorizations unless provided prior to the exam with an explanation of the reasons for the request; and (4) that counsel be permitted to attend and tape record the IME.

The defendant advances several arguments in opposition to the motion, which the court addresses below: (1) the policy provision the plaintiff seeks to enforce is void as against public policy; (2) the provision is void as against the informed consent doctrine; (3) the provision is void because Dr. Silk is not a "physician" as defined by the policy; (4) the IME request was not reasonable; (5) the preconditions proposed by the defendant were not unreasonable; (6) a fact issue exists as to whether the plaintiff engaged in bad faith/unclean hands; and (7) a factual dispute exists as to whether the plaintiff waived its right to claim a breach of the cooperation clause by arbitrarily paying out Med-Pay benefits.

First, the defendant presents two arguments to support her assertion that the policy provision requiring an insured to submit to a medical examination is void as against public policy. She has presented no evidence to show that, prior to this litigation, she ever advised the plaintiff that she declined to submit to an IME because the provision was void as against public policy.

The defendant argues that the provision violates General Statutes § 52-178a[2] and Practice Book § 13-11.[3] By their terms, these provisions pertain to requests for physical examinations in civil actions to recover damages for personal injuries, not to insurance policies. They are plainly inapplicable to the parties' contractual agreement as set forth in the policy. The decisional law concerning § 52-178a and Practice Book § 13-11 is inapplicable as well.

Second, the defendant also contends that the policy provision violates the public policy behind the informed consent doctrine. In Connecticut, lack of informed consent is a cause of action based on medical negligence, as distinguished from medical malpractice. "In order to prevail on a cause of action for lack of informed consent, a plaintiff must prove both that there was a failure to disclose a known material risk of a proposed

procedure and that such failure was a proximate cause of his injury." *Shortell* v. *Cavanagh*, 300 Conn. 383, 388, 15 A.3d 1042 (2011).

The defendant's citation to decisions from other states which reference statutory authority in those states is inapt in the absence of a similar statute in Connecticut.

Having failed to attend the requested examination, the defendant has no evidence of what information would have been provided to her at that time. She has not shown that the doctrine of informed consent is applicable to the policy provision.

Third, the defendant argues that the plaintiff has failed to prove that it requested an examination by a physician. In support of this assertion, the defendant argues that the plaintiff produced copies of Dr. Silk's medical licenses which had expired. See defendant's exhibit C (letter dated October 19, 2012, enclosing Dr. Silk's curriculum vitae).

The policy provision did not require the plaintiff to provide to the defendant proof of Dr. Silk's qualifications. It provided the information in the October 19, 2012 letter as a courtesy.

The defendant never objected to the IME on this ground prior to the commencement of suit. In addition, the policy provision does not afford an insured the right to belatedly object to a physician's examination on this ground. As noted above, the defendant's only previously stated concern about Dr. Silk's credentials was that he did not have the knowledge and expertise concerning interstitial cystitis that her own physician possessed.

"A 'physician' is defined as 'a person skilled in the art of healing: one duly authorized to treat disease: a doctor of medicine . . . .' Webster's Third New International Dictionary; see also Black's Law Dictionary (5th Ed.)." *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 337, 593 A.2d 478 (1991).

According to his curriculum vitae, Dr. Silk received his medical degree from New York Medical School, and was then an assistant professor of urology at the University of Connecticut and an attending physician at Saint Francis Hospital and Medical Center in Hartford. The provision of an expired license to practice medicine in Connecticut appears to have been inadvertent. The record establishes that he was a physician.

Fourth, the defendant argues that the plaintiff failed to show that she refused to submit to a reasonable IME. By its terms, the policy provision required the defendant to submit to the requested IME. The record reflects that the defendant's objection to the selected medical examiner and the proposed examination also was unreasonable in light of the policy language. See *Van-Haaren* v. *State Farm Mutual Automobile Ins. Co.*, 989

F.2d 1, 6–7 (1st Cir. 1993).

Fifth, the defendant contends that the preconditions she proposed were not unreasonable. The defendant's list of conditions regarding the IME constituted an improper insistence on preconditions to performance not stated in the contract. See id. The defendant's refusal to submit to an IME based upon the identity and qualifications of the physician performing the examination, and her insistence on certain conditions to performance not stated in the contract constituted an unreasonable refusal to submit to the policy conditions and breach of the IME clause.

Sixth, the defendant asserts that there is a genuine issue of material fact as to her defense of unclean hands and that the plaintiff engaged in bad faith. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382 (2004).

In support, the defendant again relies on § 52-178a and Practice Book § 13-11, which, as discussed above, are inapplicable to the contract at issue. She also reiterates her informed consent argument, which, as discussed above, is inapplicable. She also repeats her arguments concerning Dr. Silk, which the court discussed above.

In addition, she asserts that the plaintiff acted in bad faith by arbitrarily refusing to pay for the majority of Dr. Moldwin's bills. No evidentiary support was cited for this conclusory argument, which the court is not required to consider. The defendant has not shown that the plaintiff has unclean hands or engaged in bad faith.

Seventh, the defendant argues that a genuine issue of fact exists as to whether the plaintiff waived its right to assert a violation of the policy provision. She contends that the plaintiff made selective medical payments benefits to her after its request for an August, 2012 examination by Dr. Silk and never again requested that she submit to a physical examination.

This contention is plainly wrong and unsupported by the record. In defendant's exhibit 27, a letter to the defendant's counsel dated May 10, 2013, the plaintiff's counsel again requested that the defendant submit to such an examination, citing the policy provision's requirement and explicitly reserving the plaintiff's rights, including stating: "please be advised that any action taken by Amica to date should not be construed as a waiver of any of its rights." Further, the letter

stated that "Amica reserves the right to file a declaratory judgment action to seek a judicial determination of coverage for this claim." Thus, the defendant was explicitly put on notice more than four years ago that the plaintiff did not intend to waive its rights under the policy.

Next, the court must determine whether the plaintiff was prejudiced. An insured's "failure to comply with the cooperation clause is presumed to have been detrimental to the [insurance company's interests] . . . ." *Taricani* v. *Nationwide Mutual Ins. Co.*, 77 Conn. App. 139, 151, 822 A.2d 341 (2003). The Appellate Court has determined that an insured's refusal to produce various records and documentation, which reasonably pertained to the insured's loss or damage, materially prejudices the insurer by hindering its "ability to determine whether the coverage applied and to prevent loss or damage . . . [and] to investigate and defend the defendant's claim . . . ." *Chicago Title Ins. Co.* v. *Bristol Heights Associates, LLC*, supra, 142 Conn. App. 409–10.

Here, the IME was necessary for the plaintiff to properly evaluate the plaintiff's claims for benefits. Without the IME, the plaintiff could not do so. The plaintiff has shown that it was prejudiced by the defendant's failure to submit to an IME, in that it prevented the plaintiff from being able to properly evaluate the claim and to determine whether, and to what extent, the defendant's treatment and the expenses incurred for medical care were causally related to the accident.

Summary judgment is warranted because there is no genuine issue of material fact as to whether the defendant breached the policy's provision and that the plaintiff was prejudiced as a result.

### CONCLUSION

For the reasons stated above, the plaintiff has shown that it is entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is granted. The plaintiff is not required to provide Med-Pay benefits to the defendant under the policy. It is so ordered.

* Affirmed. *Amica Mutual Ins. Co.* v. *Levine*, 192 Conn. App. 620, A.3d (2019).

[1] In considering the parties' arguments, this court has considered the parties' oral and written arguments, including those presented in the plaintiff's reply memorandum (#124). By order dated June 15, 2017, the court (*Wahla, J.*) granted the defendant's motion to strike the reply. See #125.86. This court is not bound by that ruling. See *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982) (The law of the case doctrine "expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case *may* treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided . . . ." [Citations omitted; emphasis added; internal quotation marks omitted.]).

[2] General Statutes § 52-178a provides: "In any action to recover damages for personal injuries, the court or judge may order the plaintiff to submit to a physical examination by one or more physicians or surgeons. No party may be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to the court or judge."

[3] Practice Book § 13-11 (b) provides in pertinent part: "In the case of an action to recover damages for personal injuries, any party adverse to the plaintiff may file and serve . . . a request that the plaintiff submit to a physical or mental examination at the expense of the requesting party. That request shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made. Any such request shall be complied with by the plaintiff unless, within ten days from the filing of the request, the plaintiff files in writing an objection thereto specifying to which portions of said request objection is made and the reasons for said objection. The objection shall be placed on the short calendar list upon the filing thereof. The judicial authority may make such order as is just in connection with the request. No plaintiff shall be compelled to undergo a physical or mental examination by any physician to whom he or she objects in writing."